KAH/SFK      14N-0075

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BROOKE MIKITA GRASLEY, Special Administrator | ) | |
| of the Estate of Z.G., Deceased, and | ) | |
| BROOKE MIKITA GRASLEY, Individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| PRESENCE HOSPITALS PRV, a corporation, d/b/a | ) | ***PLAINTIFFS DEMAND*** |
| PRESENCE SAINT JOSEPH MEDICAL CENTER, | ) | ***TRIAL BY JURY AS TO ALL*** |
| f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER, | ) | ***DEFENDANTS EXCEPT*** |
| PRESENCE HEALTH PARTNERS, LLC, a corporation, | ) | ***THE UNITED STATES*** |
| JOLIET RADIOLOGICAL SERVICE CORPORATION, | ) | |
| a corporation, | ) | |
| EDWARD J. BRUNO, M.D., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

## COUNT I – WRONGFUL DEATH – USA

Plaintiff, BROOKE MIKITA GRASLEY, Special Administrator of the Estate of Z.G., a

minor, Deceased, by her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant,

THE UNITED STATES OF AMERICA (hereinafter "USA"), states as follows:

1.      On February 1, 2013, and at all times mentioned herein, AUNT MARTHA'S

YOUTH SERVICES CENTER, INC., (hereinafter "CENTER") was an Illinois corporation

providing health care services to patients.

2.      On February 1, 2013, and at all times mentioned herein, CENTER, was a private

entity receiving grant money from the Public Health Service pursuant to 42 U.S.C. § 233.

3.     On February 1, 2013, KWABENA A. BOATENG, M.D., (hereinafter "BOATENG"), was a physician duly licensed to practice medicine in the State of Illinois, specializing in obstetrics and gynecology.

4.     On February 1, 2013, and at all times mentioned herein, BOATENG was acting within the scope of his employment at CENTER with respect to Plaintiff, BROOKE MIKITA GRASLEY, and her unborn daughter, Z.G.

5.     On February 1, 2013, Plaintiff, BROOKE MIKITA GRASLEY, underwent an ultrasound ordered by BOATENG, at Defendant, SAINT JOSEPH MEDICAL CENTER.

6.     On February 1, 2013, EDWARD J. BRUNO, M.D. read the ultrasound ordered by Defendant, BOATENG, and reported that the placenta was 1.2 cm from the internal os.

7.     On May 28, 2013, Plaintiff, BROOKE MIKITA GRASLEY, was admitted to the labor and delivery department at Defendant, SAINT JOSEPH MEDICAL CENTER, for contractions and bloody show.

8.     On May 28, 2013, Plaintiff, BROOKE MIKITA GRASLEY, was discharged from Defendant, SAINT JOSEPH MEDICAL CENTER by BOATENG.

9.     On June 3, 2013, Plaintiff, BROOKE MIKITA GRASLEY, presented to BOATENG for a prenatal visit.

10.     On June 3, 2013, BOATENG scheduled an induction of labor for June 4, 2013.

11.     On June 4, 2013, Plaintiff, BROOKE MIKITA GRASLEY, presented to, SAINT JOSEPH MEDICAL CENTER, for induction of labor at 40 4/7 weeks gestational age.

12.     On June 4, 2013, at 10:32, BOATENG attempted artificial rupture of membranes ("AROM") for the second time.

13.     On June 4, 2013, following the rupture, BOATENG noted bloody fluid and fetal heart rate decelerations.

14.     On June 4, 2013, at 10:51, Plaintiff, BROOKE MIKITA GRASLEY, was transferred to the operating room to undergo an emergent C-section performed by BOATENG.

15.     On June 4, 2013, at 10:59, Z.G., was delivered.

16.     On June 4, 2013, at 11:15, Z.G. was transferred to the Special Care Nursery, where she required resuscitation and intubation.

17.     On June 4, 2013, at 17:27, Z.G. was diagnosed with hypovolemic shock and asphyxia and was transferred to Advocate Illinois Masonic Medical Center for a head cooling protocol.

18.     On June 4, 2013 through June 11, 2013, Z.G. remained hospitalized at Advocate Illinois Masonic Medical Center.

19.     On June 11, 2013, Z.G. died due to multisystem organ failure and hypoxic ischemic encephalopathy.

20.     At all times mentioned herein, BOATENG had a duty to possess and use the knowledge, skill, and care ordinarily used by a reasonably careful physician under the same or similar circumstances.

21.     On May 28, 2013 and thereafter, BOATENG and Defendant, USA, by and through its agent, BOATENG, were professionally negligent in the following ways:

    a)   Failed to order a repeat ultrasound;

    b)   Negligently ruptured membranes;

    c)   Left the patient's bedside despite noted blood in the amniotic fluid;

    d)   Failed to timely respond to bleeding following artificial rupture of membranes;

e) Failed to timely respond to an obstetrical emergency;

f) Failed to inform Brooke and Marc Grasley of the risks and alternatives to induction of labor; and

g) Failed to inform Brooke and Marc Grasley of the risks an alternatives to AROM at that time.

22. As a direct and proximate result of the aforesaid negligent acts or omissions, Z.G., a minor, sustained injuries which resulted in her death on June 11, 2013.

23. Z.G., a minor, left surviving BROOKE MIKITA GRASLEY, her mother, MARC GRASLEY, her father, Alexis Grasley, her minor sister, Zachary Grasley, her minor brother, Colin Grasley, her minor brother, and Sara Grasley, her minor sister, all of whom have sustained pecuniary loss as a result of the death of Z.G., a minor, including, but not limited to, loss of society, companionship, affection and love.

24. Before Z.G.'s death on June 11, 2013, Plaintiffs neither knew nor should have known that the injury to and death of Z.G. may have been wrongfully caused.

25. On January 29, 2015, Plaintiff, BROOKE MIKITA GRASLEY and MARC GRASLEY, filed two administrative tort claims, individually and on behalf of Z.G., deceased, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2401 (b), 2671-80 with the appropriate agency of Defendant, USA, the Department of Health & Human Services ("HHS").

26. Plaintiffs' administrative tort claims were brought within two years of June 11, 2013.

27. On June 11, 2015, the Circuit Court of Cook Count, appointed BROOKE MIKITA GRASLEY the Special Administrator of the Estate of Z.G., deceased, pursuant to the Wrongful Death Act of the State of Illinois, 740 ILCS 180/1 *et seq*.

28.     On June 11, 2015, Plaintiff, BROOKE MIKITA GRASLEY, Special Administrator of the Estate of Z.G., and BROOKE MIKITA GRASLEY, individually, timely filed a lawsuit in the Circuit Court of Cook County against BOATENG and others, pursuant to the Wrongful Death Act of the State of Illinois, 740 ILCS 180/1 *et seq* and the Family Expense Act of the State of Illinois, 750 ILCS 65/15 *et seq. [Circuit Court of Cook County Case No. 15 L 5938]*

29.     On September 17, 2015, HHS gave notice of the final determination and denial of Plaintiffs' administrative tort claims as required by 28 U.S.C. §§ 2401 (b), 2675(a).

30.     On January 15, 2016, Thomas P. Walsh, United States Attorney for the Northern District of Illinois, by virtue of the authority delegated to him by the Attorney General, certified that for the purposes of this case that AUNT MARTHA'S YOUTH SERVICES CENTER, INC. and KWABENA A. BOATENG, M.D.  were deemed employees of the United States pursuant to 28 U.S.C.A. § 2679 (d)(2). [Document #1 – Notice of Removal, p. 18 PageID#:18].

31.     On January 20, 2016, Circuit Court of Cook County Case No. 15 L 5938 was removed to the United States District Court Northern District of Illinois Eastern Division by Defendant, USA.

32.     On January 20, 2016, in removed case 16 C 0827, the USA was substituted for as the party defendant for BOATENG, pursuant to 28 U.S.C.A. § 2679 (d)(2).

33.     This court has jurisdiction over these claims pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b), 28 U.S.C. §2679(d), and 42 U.S.C. §233, which grant the district court original and exclusive jurisdiction over civil actions of claims against the USA for money damages.

34.     On January 21, 2016,  Defendant, USA, filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) arguing that Plaintiffs' action was prematurely instituted pursuant to 28 U.S.C. §2675 (a).

35.     On January 27, 2016, the Honorable Samuel Der−Yeghiayan, dismissed case 16 C 0827, against the USA, without prejudice.

36.     This cause is timely filed within the statute of limitations pursuant to 28 U.S.C. 2401(b), as it was brought within six (6) months after the date of notice of final denial of the claim by the agency to which it was presented.

37.     Attached to this Complaint at Law are the reviewing physician reports required under state law by 735 ILCS 5/2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiff, BROOKE MIKITA GRASLEY, Special Administrator of the Estate of Z.G., Deceased, demands judgment against the Defendant, THE UNITED STATES OF AMERICA, in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).

## COUNT II – FAMILY EXPENSE ACT- USA

Plaintiff, BROOKE MIKITA GRASLEY, Individually, by her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, THE UNITED STATES OF AMERICA (hereinafter "USA"), states as follows:

1-37.   Plaintiff re-asserts and re-alleges Paragraphs 1 through 37 of Count I as if fully stated herein.

36.     On June 4, 2013, and at all times mentioned herein, Plaintiff, BROOKE MIKITA GRASLEY, was the mother of Z.G., a minor.

37.     On June 4, 2013, and at all times mentioned herein, Marc Grasley was the father of Z.G., a minor.

38.     As a direct and proximate result of the aforesaid negligent acts or omissions, BROOKE MIKITA GRASLEY and Marc Grasley became obligated for various expenses related to the treatment of Z.G., a minor, and bring this action pursuant to the Family Expense Act of the State of Illinois, 750 ILCS 65/15, to recover said expenses.

WHEREFORE, Plaintiff, BROOKE MIKITA GRASLEY, Individually, demands judgment against the Defendant, THE UNITED STATES OF AMERICA, in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).

**COUNT III- WRONGFUL DEATH –**
**PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH**
**MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER,**
**PRESENCE HEALTH PARTNERS, LLC, a corporation, JOLIET RADIOLOGICAL**
**SERVICE CORPORATION, a corporation, EDWARD J. BRUNO, M.D.**

Plaintiff, BROOKE MIKITA GRASLEY, Special Administrator of the Estate of Z.G. a minor, Deceased, by her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendants, PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER (hereinafter "SAINT JOSEPH MEDICAL CENTER"), PRESENCE HEALTH PARTNERS, LLC, a corporation (hereinafter "PRESENCE HEALTH PARTNERS"), JOLIET RADIOLOGICAL SERVICE CORPORATION, a corporation (hereinafter "RADIOLOGICAL SERVICE"), and EDWARD J. BRUNO, M.D. (hereinafter "BRUNO"), and each of them, states as follows:

1.     On February 1, 2013, and at all times mentioned herein, Defendant, SAINT JOSEPH MEDICAL CENTER, was a duly licensed healthcare institution providing treatment and services to patients admitted therein.

7

2.      On February 1, 2013, and at all times mentioned herein, Defendant, SAINT JOSEPH MEDICAL CENTER, held itself out to the community as a provider of complete obstetrical and gynecological care.

3.      On February 1, 2013, and at all times mentioned herein, Defendant, PRESENCE HEALTH PARTNERS, was a duly licensed physician group providing health services to patients through its affiliated physicians.

4.      On February 1, 2013, and at all times mentioned herein, Defendant, RADIOLOGICAL SERVICE, was a licensed healthcare corporation providing health services to patients through its affiliated physicians.

5.      On February 1, 2013, and at all times mentioned herein, Defendant, BRUNO, was a physician duly licensed to practice medicine in the State of Illinois specializing in radiology.

6.      On February 1, 2013, and at all times mentioned herein, Defendant, BRUNO, was a duly authorized actual agent and/or employee of Defendant, RADIOLOGICAL SERVICE, acting within the scope of his agency and/or employment.

7.      On February 1, 2013 and at all times mentioned herein, Defendant, BRUNO, was a duly authorized apparent agent of Defendant, RADIOLOGICAL SERVICE, acting within the scope of his apparent agency.

8.      On February 1, 2013, Defendant, SAINT JOSEPH MEDICAL, had the right to control the actions of Defendant, BRUNO.

9.      On February 1, 2013, Defendant, SAINT JOSEPH MEDICAL, had the right to discharge Defendant, BRUNO.

11.     On February 1, 2013, and at all times mentioned herein, Defendant, BRUNO, was a duly authorized actual agent and/or employee of Defendant, SAINT JOSEPH MEDICAL CENTER, acting within the scope of his agency and/or employment.

12. On February 1, 2013 and at all times mentioned herein, Defendant, BRUNO, was a duly authorized apparent agent of Defendant, SAINT JOSEPH MEDICAL CENTER, acting within the scope of his apparent agency.

13. On February 1, 2013, Defendant, PRESENCE HEALTH PARTNERS, had the right to control the actions of Defendant, BRUNO.

14. On February 1, 2013, Defendant, PRESENCE HEALTH PARTNERS, had the right to discharge Defendant, BRUNO.

15. On February 1, 2013, Defendant, BRUNO, was a member of PRESENCE HEALTH PARTNERS.

16. On and before February 1, 2013, Defendant, BRUNO, had received incentive payments from, PRESENCE HEALTH PARTNERS.

17. On February 1, 2013, and at all times mentioned herein, Defendant, BRUNO, was a duly authorized actual agent and/or employee of Defendant, PRESENCE HEALTH PARTNERS, acting within the scope of his agency and/or employment.

18. On February 1, 2013, and at all times mentioned herein, Defendant, BRUNO, was a duly authorized apparent agent of Defendant, PRESENCE HEALTH PARTNERS, acting within the scope of his apparent agency.

19. On January 28, 2013, and at all times mentioned herein, BOATENG, was a physician duly licensed to practice medicine in the State of Illinois specializing in obstetrics and gynecology.

20. On January 28, 2013, and at all times mentioned herein, SAINT JOSEPH MEDICAL, had the right to control the actions of Defendant, BOATENG.

21. On January 28, 2013, and at all times mentioned herein, SAINT JOSEPH MEDICAL, had the right to discharge Defendant, BOATENG.

22.     On January 28, 2013, and at all times mentioned herein, BOATENG, was a duly authorized actual agent and/or employee of Defendant, SAINT JOSEPH MEDICAL CENTER, acting within the scope of his agency and/or employment.

23.     On January 28, 2013, and at all times mentioned herein, BOATENG, was a duly authorized apparent agent of Defendant, SAINT JOSEPH MEDICAL CENTER, acting within the scope of his apparent agency.

24.     On February 1, 2013, Defendant, PRESENCE HEALTH PARTNERS, had the right to control the actions of BOATENG.

25.     On February 1, 2013, Defendant, PRESENCE HEALTH PARTNERS, had the right to discharge BOATENG.

26.     On February 1, 2013, BOATENG, was a member of PRESENCE HEALTH PARTNERS.

27.     On and before February 1, 2013, BOATENG, had received incentive payments from, PRESENCE HEALTH PARTNERS.

28.     On January 28, 2013, and at all times mentioned herein, BOATENG, was a duly authorized actual agent and/or employee of Defendant, PRESENCE HEALTH PARTNERS, acting within the scope of his agency and/or employment.

29.     On January 28, 2013, and at all times mentioned herein, BOATENG, was a duly authorized apparent agent of Defendant, PRESENCE HEALTH PARTNERS, acting within the scope of his apparent agency.

30.     On January 28, 2013, and at all times mentioned herein, Plaintiff, BROOKE MIKITA GRASLEY, did not choose BOATENG, but relied upon Defendant, SAINT JOSEPH MEDICAL CENTER, to provide her complete obstetrical care.

10

31.     On January 28, 2013, and at all times mentioned herein, Plaintiff, BROOKE MIKITA GRASLEY, did not choose BOATENG, but relied upon Defendant, PRESENCE HEALTH PARTNERS, to provide her complete obstetrical care.

32.     On January 28, 2013, and at all times mentioned herein, Defendant, SAINT JOSEPH MEDICAL CENTER did not inform Plaintiff, BROOKE MIKITA GRASLEY, that BOATENG, was not an agent and/or employee of SAINT JOSEPH MEDICAL CENTER.

33.     On January 28, 2013, and at all times mentioned herein, Defendant, PRESENCE HEALTH PARTNERS, did not inform Plaintiff, BROOKE MIKITA GRASLEY, that BOATENG, was not an agent and/or employee of PRESENCE HEALTH PARTNERS.

34.     On January 28, 2013, and at all times mentioned herein, Plaintiff, BROOKE MIKITA GRASLEY, neither knew nor should have known that BOATENG, was not an employee of SAINT JOSEPH MEDICAL CENTER.

35.     On January 28, 2013, and at all times mentioned herein, Plaintiff, BROOKE MIKITA GRASLEY, neither knew nor should have known that BOATENG, was not an employee of PRESENCE HEALTH PARTNERS.

36.     On February 1, 2013, Plaintiff, BROOKE MIKITA GRASLEY, underwent an ultrasound ordered by BOATENG, at Defendant, SAINT JOSEPH MEDICAL CENTER.

37.     On February 1, 2013, Defendant, BRUNO, read the ultrasound and reported that the placenta was 1.2 cm from the internal os.

38.     On February 1, 2013, Plaintiff, BROOKE MIKITA GRASLEY, did not choose Defendant, BRUNO, but relied upon Defendant, SAINT JOSEPH MEDICAL CENTER to provide her complete care.

11

39. On February 1, 2013, Plaintiff, BROOKE MIKITA GRASLEY, did not choose Defendant, BRUNO, but relied upon Defendant, PRESENCE HEALTH PARTNERS, to provide her complete care.

40. On February 1, 2013, Defendant, SAINT JOSEPH MEDICAL CENTER and did not inform Plaintiff, BROOKE MIKITA GRASLEY, that Defendant, BRUNO, was not an agent and/or employee of SAINT JOSEPH MEDICAL CENTER.

41. On February 1, 2013, Defendant, PRESENCE HEALTH PARTNERS, did not informed Plaintiff, BROOKE MIKITA GRASLEY, that Defendant, BRUNO, was not an agent and/or employee of PRESENCE HEALTH PARTNERS.

42. On February 1, 2013, Plaintiff, BROOKE MIKITA GRASLEY, neither knew nor should have known that Defendant, BRUNO, was not an employee of SAINT JOSEPH MEDICAL CENTER.

43. On February 1, 2013, Plaintiff, BROOKE MIKITA GRASLEY, neither knew nor should have known that Defendant, BRUNO, was not an employee of PRESENCE HEALTH PARTNERS.

44. On May 28, 2013, Plaintiff, BROOKE MIKITA GRASLEY, was admitted to the labor and delivery department at Defendant, SAINT JOSEPH MEDICAL CENTER, for contractions and bloody show.

45. On May 28, 2013, Plaintiff, BROOKE MIKITA GRASLEY, was discharged from Defendant, SAINT JOSEPH MEDICAL CENTER by BOATENG.

46. On June 3, 2013, Plaintiff, BROOKE MIKITA GRASLEY, presented to BOATENG for a prenatal visit.

47.     On June 3, 2013, Defendant, BOATENG, scheduled an induction of labor for June 4, 2013.

48.     On June 4, 2013, Plaintiff, BROOKE MIKITA GRASLEY, presented to, SAINT JOSEPH MEDICAL CENTER, for induction of labor at 40 4/7 weeks gestation.

49.     On June 4, 2013, at 10:32, BOATENG, attempted artificial rupture of membranes ("AROM") for the second time.

50.     On June 4, 2013, following the rupture, BOATENG, noted bloody fluid and fetal heart rate decelerations.

51.     On June 4, 2013, at 10:51, Plaintiff, BROOKE MIKITA GRASLEY, was transferred to the operating room to undergo an emergent C-section performed by BOATENG.

52.     On June 4, 2013, at 10:59, Z.G., was delivered.

53.     On June 4, 2013, at 11:15, Z.G. was transferred to the Special Care Nursery, where she required resuscitation and intubation.

54.     On June 4, 2013, at 17:27, Z.G. was diagnosed with hypovolemic shock and asphyxia and was transferred to Advocate Illinois Masonic Medical Center for a head cooling protocol.

55.     On June 4, 2013 through June 11, 2013, Z.G. remained hospitalized at Advocate Illinois Masonic Medical Center.

56.     On June 11, 2013, Z.G. died due to multisystem organ failure and hypoxic ischemic encephalopathy.

57.     At all times mentioned herein, Defendant, BRUNO, had a duty to possess and use the knowledge, skill, and care ordinarily used by a reasonably careful physician under the same or similar circumstances.

58.     On February 1, 2013, Defendant, BRUNO, was professionally negligent in the following ways:

    a)    improperly placed the calipers measuring the distance between the cervical os and the placenta during Brooke Mikita Grasley's ultrasound; and

    b)    overestimated the distance between Brooke Mikita Grasley's cervical os and the placenta, measuring it incorrectly as 1.2 cm when there is, in fact, no separation between the cervical os and the placenta.

59.     As a direct and proximate result of the aforesaid negligent acts or omissions, Z.G., a minor, sustained injuries which resulted in her death on June 11, 2013.

60.     Before ZG's death on June 11, 2013, Plaintiffs neither knew nor should have known that the injury to and death of Z.G. may have been wrongfully caused and this cause is brought within two years of June 11, 2013.

61.     Z.G., a minor, left surviving her BROOKE MIKITA GRASLEY, her mother, MARC GRASLEY, her father, Alexis Grasley, her minor sister, Zachary Grasley, her minor brother, Colin Grasley, her minor brother, and Sara Grasley, her minor sister, all of whom have sustained pecuniary loss as a result of the death of Z.G., a minor, including, but not limited to, loss of society, companionship, affection and love.

62.     On June 11, 2015, the Circuit Court of Cook Count, appointed BROOKE MIKITA GRASLEY the Special Administrator of the Estate of Z.G., deceased, pursuant to the Wrongful Death Act of the State of Illinois, 740 ILCS 180/1 *et seq*.

63.     On June 11, 2015, Plaintiff, BROOKE MIKITA GRASLEY, Special Administrator of the Estate of Z.G., and BROOKE MIKITA GRASLEY, individually, timely filed a lawsuit in the Circuit Court of Cook County against the aforementioned Defendants pursuant to the Wrongful

Death Act of the State of Illinois, 740 ILCS 180/1 *et seq* and the Family Expense Act of the State of Illinois, 750 ILCS 65/15 *et seq.* *[Circuit Court of Cook County Case No. 15 L 5938]*

64.     On January 15, 2016, Thomas P. Walsh, United States Attorney for the Northern District of Illinois, by virtue of the authority delegated to him by the Attorney General, certified that for the purposes of this case that AUNT MARTHA'S YOUTH SERVICES CENTER, INC. and KWABENA A. BOATENG, M.D.  were deemed employees of the United States pursuant to 28 U.S.C.A. § 2679 (d)(2). [Document #1 – Notice of Removal, p. 18 PageID#:18].

65.     On January 20, 2016, Circuit Court of Cook County Case No. 15 L 5938 was removed to the United States District Court Northern District of Illinois Eastern Division by Defendant, USA.

66.     On January 20, 2016, in removed case 16 C 0827, the USA was substituted for as the party defendant for BOATENG, pursuant to 28 U.S.C.A. § 2679 (d)(2).

67.     This  Court has original and exclusive  jurisdiction over Plaintiffs' federal claims pled in Counts I and II against Defendant, USA, pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b), 28 U.S.C. §2679(d), and 42 U.S.C. §233.

68.     Plaintiffs' claims  against Defendants, PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER, PRESENCE HEALTH PARTNERS, LLC, a corporation, RADIOLOGICAL SERVICE, a corporation, EDWARD J. BRUNO, M.D., derive from the same common nucleus of operative facts as the federal claims.

69.     It is appropriate for this Court to exercise supplemental jurisdiction over Defendants, PRESENCE HOSPITALS PRV, a corporation, d/b/A PRESENCE SAINT JOSEPH MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER, PRESENCE

HEALTH PARTNERS, LLC, a corporation, RADIOLOGICAL SERVICE, a corporation, EDWARD J. BRUNO, M.D., because the claim in this Count III is so related to the claims in Counts I and II that they form part of the same case in controversy under 28 U.S.C. §1367.

70.     Attached to this Complaint at Law is the affidavit of one of Plaintiffs' attorneys and physician reports pursuant to 735 ILCS 5/2-622.

WHEREFORE, Plaintiff, BROOKE MIKITA GRASLEY, Special Administrator of the Estate of Z.G., Deceased, demands judgment against Defendants, PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER, PRESENCE HEALTH PARTNERS, LLC, a corporation, RADIOLOGICAL SERVICE, a corporation, EDWARD J. BRUNO, M.D., and each of them, in an amount in excess of ONE-HUNDRED THOUSAND DOLLARS ($100,000.00).

**COUNT IV - FAMILY EXPENSE ACT**
**PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH**
**MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER,**
**PRESENCE HEALTH PARTNERS, LLC, a corporation, JOLIET RADIOLOGICAL**
**SERVICE CORPORATION, a corporation, EDWARD J. BRUNO, M.D.**

Plaintiff, BROOKE MIKITA GRASLEY, individually, by her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendants, PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER (hereinafter "SAINT JOSEPH MEDICAL CENTER"), PRESENCE HEALTH PARTNERS, LLC, a corporation (hereinafter "PRESENCE HEALTH PARTNERS"), RADIOLOGICAL SERVICE CORPORATION, a corporation (hereinafter "RADIOLOGICAL SERVICE"), EDWARD J. BRUNO, M.D. (hereinafter "BRUNO"), and each of them, states as follows:

1-70.   Plaintiffs re-assert and re-allege paragraphs 1-70 of Count III as if fully set forth herein.

71.   On June 4, 2013, and at all times mentioned herein, Plaintiff, BROOKE MIKITA GRASLEY, was the mother of Z.G., a minor.

72.   On June 4, 2013, and at all times mentioned herein, Plaintiff, Marc Grasley, was the father of Z.G., a minor.

73.   As a direct and proximate result of the aforesaid negligent acts or omissions, BROOKE MIKITA GRASLEY and Marc Grasley, became obligated for various expenses related to the treatment of Z.G., a minor, and bring this action pursuant to the Family Expense Act of the State of Illinois, 750 ILCS 65/15 and bring this action to recover said expenses.

WHEREFORE, Plaintiff, BROOKE MIKITA GRASLEY, Individually, demands judgment against Defendants, PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER, PRESENCE HEALTH PARTNERS, LLC, a corporation, RADIOLOGICAL SERVICE EDWARD J. BRUNO, M.D., and each of them, in an amount in excess of ONE-HUNDRED THOUSAND DOLLARS ($100,000.00).


Respectfully submitted,

By:     s/Keith A. Hebeisen
        KEITH A. HEBEISEN
        Attorney for Plaintiffs
        CLIFFORD LAW OFFICES, P.C.
        120 N. La Salle Street, Suite 3100
        Chicago, Illinois 60602
        (312) 899-9090
        KAH@cliffordlaw.com

KAH/SFK     14N-0075

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BROOKE MIKITA GRASLEY, Special Administrator ) | |
| of the Estate of Z.G., Deceased, and ) | |
| BROOKE MIKITA GRASLEY, Individually, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| PRESENCE HOSPITALS PRV, a corporation, d/b/a ) | |
|   PRESENCE SAINT JOSEPH MEDICAL CENTER, ) | |
|   f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER, ) | |
| PRESENCE HEALTH PARTNERS, LLC, a corporation, ) | |
| JOLIET RADIOLOGICAL SERVICE CORPORATION, ) | |
|   a corporation, ) | |
| EDWARD J. BRUNO, M.D., ) | |
| ) | |

## PLAINTIFFS' ATTORNEY AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622(a)(1) & (d)

KEITH A. HEBEISEN states as follows:

1.    I am one of the attorneys with responsibility for this matter on behalf of the Plaintiffs.

2.    I have consulted and reviewed the facts of this case with health professionals whom I reasonably believe: (i) are knowledgeable in the relevant issues involved in this particular action; (ii) practice or have practiced within the last six (6) years or teaches or have taught within the last six (6) years in the same area of health care or medicine that is at issue in this particular action; and (iii) are qualified by experience or demonstrated competence in the subject of this case.

3.    The reviewing health professionals have determined in written reports after review of the medical records and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action against PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER, PRESENCE HEALTH PARTNERS, LLC, a corporation, JOLIET RADIOLOGICAL SERVICE CORPORATION, a corporation, EDWARD J. BRUNO, M.D., and

KWABENA A. BOATENG, M.D.

4.     In addition, the reviewing health professionals have determined in written reports after review of the medical records and other relevant material involved in this particular action that reasonable health professionals would have informed the patient of the risks and consequences of labor induction, the risks and consequences of AROM and would  have disclosed the options and alternative treatments that a reasonably careful physician would disclose under similar circumstances.

5.     I have concluded on the basis of the reviewing health professionals' reviews and consultations that there is a reasonable and meritorious cause for filing of this action against PRESENCE HOSPITALS PRV, a corporation, d/b/a PRESENCE SAINT JOSEPH MEDICAL CENTER, f/k/a PROVENA SAINT JOSEPH MEDICAL CENTER, PRESENCE HEALTH PARTNERS, LLC, a corporation, JOLIET RADIOLOGICAL SERVICE CORPORATION, a corporation, EDWARD J. BRUNO, M.D., and KWABENA A. BOATENG, M.D.

6.     A copy of the written reports are attached.

FURTHER AFFIANT SAYETH NOT.

By:   s/Keith A. Hebeisen
        KEITH A. HEBEISEN
        Attorney for Plaintiffs
        CLIFFORD LAW OFFICES, P.C.
        120 N. La Salle Street, Suite 3100
        Chicago, Illinois 60602
        (312) 899-9090
        KAH@cliffordlaw.com

Keith A. Hebeisen
Sarah F. King
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602

        *Re:*    ██████████, *a Minor, Deceased, et al. v. Provena Saint Joseph Medical Center, et al.*
           *File No. 14N-0075*

I am a physician duly licensed to practice medicine in all of its branches, specializing in radiology and ultrasonography. I am knowledgeable in the relevant issues involved in this particular matter. I have practiced within the last six years in the same area of medicine that is at issue in this case and I am qualified by experience and demonstrated competence in the subject matter of this case.

I have reviewed the ultrasound pertaining to Brooke Mikita Grasley and ███████████from Provena Saint Joseph Medical Center. I express the opinions stated herein to a reasonable degree of medical certainty based upon my training, education, and experience and my review of the aforesaid materials.

On February 1, 2013, Brooke underwent an ultrasound ordered by obstetrician/gynecologist, Kwabena A. Boateng, M.D., at Provena Saint Joseph Medical Center. The ultrasound was read by radiologist, Edward J. Bruno, M.D., who reported that the placenta is located along the right lateral wall, lying 1.2 cm from the internal os.

Based upon my review of the aforementioned materials and my training, education, and experience, I have determined that that there is a reasonable and meritorious cause for the filing of an action against the radiology staff at Provena Saint Joseph Medical Center, including Edward J. Bruno, M.D. My opinions, based upon a reasonable degree of medical certainty, are that certain acts and omissions of Edward J. Bruno, M.D. breached the medical standard of care.
Edward J. Bruno, M.D was professionally negligent in one or more of the following ways:

    a. improperly placed the calipers measuring the distance between the cervical os and the placenta during Brooke Mikita Grasley's ultrasound; and

    b. overestimated the distance between Brooke Mikita Grasley's cervical os and the placenta, measuring it incorrectly as 1.2 cm when there is, in fact, no separation between the cervical os and the placenta.

My opinions are subject to modification upon review of additional materials.

Sincerely yours,

Keith A. Hebeisen
Sarah F. King
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602

      ***Re:***    ████████, *a Minor, Deceased, et al. v. Provena Saint Joseph Medical Center,*
      *et al.*
      ***File No. 14N-0075***

I am a physician duly licensed to practice medicine in all of its branches. I am knowledgeable in the relevant issues involved in this particular matter. I have practiced within the last six years in the same area of medicine that is at issue in this case and I am qualified by experience and demonstrated competence in the subject matter of this case.

I have reviewed the medical records pertaining to Brooke Mikita Grasley and █████████ including medical records from Aunt Martha's Health Center, Provena Saint Joseph Medical Center, and Advocate Illinois Masonis. I express the opinions stated herein to a reasonable degree of medical certainty based upon my training, education, and experience and my review of the aforesaid materials.

On January 28, 2013, Brooke Mikita Grasley presented to Aunt Martha's Health Center at 22 weeks pregnant. The fundal height was 22, and the fetal heart rate was 140 with positive fetal movement. Brooke's blood pressure was reported as 122/82.

On February 1, 2013, Brooke underwent an ultrasound ordered by obstetrician/gynecologist, Kwabena A. Boateng, M.D., at Provena Saint Joseph Medical Center. The ultrasound was read by radiologist, Edward J. Bruno, M.D., who reported that the placenta is located along the right lateral wall and shows no excessive maturity; it is 1.2 cm from the internal os and therefore is considered low lying; and it does not cover the cervical os.

On April 1, 2013, Brooke presented to Aunt Martha's Health Center at 30 weeks pregnant. The fundal height was 30. The fetal heart rate was 140 with positive fetal movement. Brooke's blood pressure was reported as 126/78.

On May 28, 2013, at 3:25 p.m., Brooke was admitted to the labor and delivery department at Provena Saint Joseph Medical Center for contractions and bloody show. At 3:40 p.m., Brooke underwent a labor assessment which showed her cervix was dilated at 2 cm and was 50% effaced, and the fetus was at the -3 station. Brooke had abdominal pain and cramping, irregular contractions, and a small amount of bloody show, which was noted on her vaginal exam. Brooke's contractions were monitored throughout the evening and noted to be irregular/occasional. Dr. Boateng came to the bedside at 8:10 p.m. and noted that her contractions were unchanged. Brooke was discharged that same night.

On June 3, 2013, Brooke was seen and evaluated by Dr. Boateng for a prenatal visit at Aunt Martha's Health Center. Brooke was 40 weeks pregnant, and Dr. Boateng planned for Brooke to undergo an induction of labor for 7:00am the next day.

On June 4, 2013, at 7:30AM, Brooke was admitted to Provena Saint Joseph Medical Center for induction of labor at 40 4/7 weeks pregnant. She was attended by Nurse Lisa Chapman.

At 8:24, Dr. Boateng presented to Brooke's bedside. According to the records he stayed at bedside a few minutes, reviewed fetal heart tones and started Brooke on a Pitocin titration of 6 mu/min.

From 8:24 AM through 10:32AM, Brooke and her baby progressed nicely with fetal hearts tones generally in the 120's, moderate variability, accelerations and no decelerations and contractions 2-4 minutes apart, lasting 60 seconds.

At 10:32AM, Dr. Boateng returned to Brooke's bedside. According to Dr. Boateng's operative report Brooke was 4cm dilated, 80% effaced and that her baby was at -1 station. This information conflicts with the Nurse Chapman's record which shows Brooke was 3.5 cm, 90% effaced and that her baby was at the -3 station. Dr. Boateng

At 10:33AM Dr. Boateng made a "SECOND ATTEMPT AT AROM." Following the rupture blood was noted in the amniotic fluid. Dr. Boateng left bedside.

Within two minutes of rupture the baby's heart rate became non-reassuring and decelerated to 60-70. At 10:35AM Nurse Chapman changed Brooke to a left lateral position.

At 10:37AM Nurse Chapman performed a vaginal exam and noted Brooke was 4 cm, 90% effaced, and that the baby was still at -3 station. Nurse Chapman also noted "LARGE BLEEDING."

At 10:39AM Nurse Chapman called Dr. Boateng. She changed Brooke's position to right lateral, applied oxygen and turned off Pitocin.

At 10:41AM Brooke was placed on her hands and knees. Despite intervention, the baby's fetal heart rate repeatedly decelerated to 60-70bpm.

At 10:49AM Dr. Boateng finally returned to bedside. Brooke's blood pressure had dropped to 80/48 and "BRIGHT RED" "LARGE BLEEDING" with "CLOTS" was noted from her vagina. Dr. Boateng called for an emergent C-section.

At 10:51AM Brooke was transferred to the operating room. According to the anesthesia record, at 10:58AM Dr. Boateng made the incision and the baby Zoe was delivered at 10:59AM.

On delivery ▇▇▇ was extremely pale, with poor muscle tone and shallow breathing. She required resuscitation and oxygen by Jayesh Kothari, M.D. According to the delivery report and Dr.

2

Kothari's record ███ Apgars were 3, 5, 7 at 1, 5, and 10 minutes respectively. In contrast, Dr. Boateng recorded Apgars of 6 and 7 in his operative report recorded as 6 and 7.

At 11:15 AM ███ was transferred to the Special Care Nursery, where she required further resuscitation, intubation and ultimately a blood transfusion. At 11:30AM, the first umbilical cord blood gas was reported as pH 7.40. However this gas is unreliable and inaccurate due to the presence of a 1.2 ml air bubble.

At 11:32 AM ███ underwent an umbilical venous catheter placement and was subsequently given normal saline bolus then bicarbonate bolus. Zoe underwent several unsuccessful line placements.

At 12:24PM the repeat arterial blood gas was reported as pH 6.79. At 13:15, the repeat arterial blood gas was reported as pH 6.96. Zoe's initial HgB was 7.5 (13.5-18.5 nl), she was transfused, up to 11.9.

At 17:27 Zoe was diagnosed with hypovolemic shock and asphyxia and was transferred to Advocate Illinois Masonic Medical Center for a head cooling protocol.

From June 4, 2013 through June 11, 2013 ███ remained admitted to Advocate Illinois Masonic Medical Center. During this time period, Zoe's health continued to decline.

On June 11, 2013, ███ Grasley died due to multisystem organ failure and hypoxic ischemic encephalopathy.

Based upon my review of the aforementioned materials and my training, education, and experience, I have determined that that there is a reasonable and meritorious cause for the filing of an action against My opinions, based upon a reasonable degree of medical certainty, are that certain acts and omissions of Kwabena A. Boateng, M.D. breached the medical standard of care.

Kwabena A. Boateng, M.D. was professionally negligent in one or more of the following ways:

    a. Failed to order a repeat ultrasound;
    b. Negligently ruptured membranes;
    c. Left the patient's bedside despite noted blood in the amniotic fluid;
    d. Failed to timely respond to bleeding following artificial rupture of membranes
    e. Failed to timely respond to an obstetrical emergency; and
    f. Failed to inform Brook and Marc Grasely of the risks and alternatives to induction of labor; and
    g. Failed to inform Brooke and Marc Grasley of the risks an alternatives to AROM at that time.

The aforesaid negligent acts or omissions were a proximate cause of ███ Grasley's injuries and death.

My opinions are subject to modification upon review of additional materials.

3

Very Truly Yours,